[No. 13634. Department Two. March 21, 1917.]

*In the Matter of the APPLICATION OF HENRY ANDERSON to Purchase Tide Land for Oyster Cultivation.*[1]

PUBLIC LANDS—SALE OF TIDE LANDS—FISH—OYSTER CULTIVATION —RIGHT TO PURCHASE—DISCRETION OF STATE BOARD—STATUTES. It is not discretionary with the board of state land commissioners as to when it will entertain applications for the purchase of tide lands for oyster culture, or as to when it will dispose of such lands for that purpose, but any qualified person complying with the act has the right to purchase such lands for oyster culture, under the act entitled an act providing for the sale and purchase of tide lands of the third class for the purpose of oyster planting, "and to encourage and facilitate such industry;" in view of Rem. Code, § 6799, of the act, providing that it shall be lawful for any person entitled to purchase such lands to make a survey, subject to the discretionary control of the state board; § 6800 providing the price at which they may purchase; § 6801 providing for the filing of an application, contest and hearing; § 6803 providing for the purchase of lands not included in natural oyster beds, pursuant to the provisions of the act, in subordination to any preemption right conferred upon prior occupants and upland owners; and § 6804, confining the right to citizens, and providing that the land shall be subject to resale if used for purposes other than the purposes specified in the act.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered July 8, 1916, reversing an order of the board of state land commissioners denying an application to purchase tide lands for oyster cultivation, after a hearing before the court. Affirmed.

[1]Reported in 163 Pac. 767.

*The Attorney General* and *R. E. Campbell, Assistant,* for appellant.

*Gordon & Easterday,* for respondent.

PARKER, J.—This is an appeal by the board of state land commissioners from a judgment of the superior court for Grays Harbor county, reversing an order and decision of the board rejecting and refusing to entertain the application of Henry Anderson to purchase certain tide land for oyster cultivation under the provisions of chapter 24, Laws of 1895, p. 36, being § 6799 *et seq.* of Rem. Code.

In February, 1914, Anderson filed, in the office of the commissioner of public lands, his application to purchase certain tide land situated in Grays Harbor county for oyster cultivation. No contention was made in the superior court, nor is here made, that Anderson's application was insufficient in form or substance under the act of 1895, nor that the tide land he sought to purchase is not of the class subject to sale for oyster cultivation. On September 28, 1914, Anderson's application, with others then pending, was rejected by the board, which rejection was evidenced by its decision and order then made and entered upon its records as follows:

"It appearing to the board at this time that applications have been filed for the purchase of tide lands of the second class belonging to the state of Washington, for the purpose of oyster cultivation, in Chehalis and Pacific counties, as shown in the following schedule, . . . :

"Application No. 7344, by Henry Anderson, . . .

"It further appearing that, after careful investigation of the matter, this board is of the opinion that it is not to the best interests of the state to sell said tide lands for the purposes contemplated, and that said applications should be rejected; it is, therefore,

"Ordered and Determined, That the applications shown in the schedule hereinbefore given be and the same are hereby rejected; and the commissioner of public lands is authorized and directed to note such rejection upon the records of

his office and to return to the applicants the amount of the special deposit in each case.

"It is further ordered and directed, That such notations be made upon the records in the office of the commissioner of public lands as will result in withholding these lands from sale until further ordered by this board."

Thus it appears that the board's rejection and refusal to entertain Anderson's application was solely because its members were of the opinion that it was not to the best interests of the state to then dispose of the land for the purpose of oyster cultivation, and that it was within the discretion of the board to withhold the land from such disposition for that reason. Anderson gave notice and perfected his appeal from this decision and order of the board to the superior court for Grays. Harbor county under § 6616 *et seq.* of Rem. Code, relating to appeals from decisions of the board. The matter being duly submitted to that court, a judgment was rendered therein, which, omitting the usual formal recitals, reads as follows:

"Now therefore, it is considered, ordered, adjudged and decreed: That the order of the board of state land commissioners of date September 28, 1914, insofar as it denies the application of said Henry Anderson to purchase tide lands under his application No. 7344, be, and the same is hereby reversed, and the said board is directed to entertain the application referred to in the manner provided by law."

From this disposition of the matter in the superior court, the board has appealed to this court.

The contention here made in behalf of the board, and as was also made in the superior court, is, in substance, that it is wholly discretionary with the board as to when it will entertain applications of the nature made by Anderson, and as to when it will dispose of tide lands for oyster cultivation to such an applicant under the act of 1895, and that its decision is, therefore, not reviewable in the courts. We are thus called upon to ascertain from the provisions of the act the extent of, and the limitation upon, the discretion of the

board in the exercise of its duties and powers. We shall refer to the act by section numbers as found at pp. 36-39 of the Laws of 1895. The title of the act reads:

"An act providing for the sale and purchase of tide lands of the third class and the manner of conveying the same for the purposes of oyster planting, to encourage and facilitate said industry."

Section 1 reads:

"It shall be lawful for any person who is entitled to purchase tide lands pursuant to the act of March 26, 1890, as being an occupant of land planted with oysters, to survey or cause to be surveyed at his own expense, the land that pursuant to said act he is entitled to purchase, not exceeding one hundred acres in area: *Provided,* That the party making application to purchase under the provisions of this act shall accompany such application with a certificate under oath to the effect that lands purchased under the provisions of this act shall be used for oyster planting purposes only." Rem. Code, § 6799.

The act of 1890, therein referred to, gives certain prior occupants of oyster tide lands the right to purchase the same. Section 2 reads:

"Survey and description in duplicate of such tract shall be subject to the direction, oversight and approval of the board of land commissioners, and one description of said tract as surveyed shall be filed with and be recorded by the county auditor of the county in which said tide lands are situated, in a book kept by him for such especial purpose, and a duplicate description in the office of the commissioner of public lands." Id., § 6799.

Section 3 reads in part as follows:

". . . The persons entitled to purchase such oyster beds under the provisions of this act may purchase the same at the rate of one dollar and twenty-five cents per acre, . . . and the purchaser shall thereupon be entitled to a deed to the same; said deed shall be executed by the governor, attested by the secretary of state with the seal of the state thereunto attached, which deed shall contain the conditions of defeasance in this act provided." Id., § 6800.

Section 4 has reference to the time within which prior occupants may exercise the right to purchase.

Section 5 reads in part as follows:

"Upon the filing of a description of the survey of such land, as provided for by the foregoing sections of this act, the person or persons having occupied or desiring to occupy such lands as described in section one of this act, may file with the commissioner of public lands an application to purchase said lands, together with a description of the lands applied for, by metes and bounds, and upon the receipt of the same the commissioner of public lands shall, at the expense of the applicant, publish, or cause to be published, for three successive weeks in any newspaper of general circulation printed and published in the county where such lands are situated, a notice of such application to purchase, giving therein a description of lands applied for. During the next thirty days following the last publication of said notice, any person claiming a prior right to purchase such tide lands may file with the commissioner of public lands a contest for the purpose of establishing a prior right to purchase, or, upon petition of ten citizens who shall be residents of the county wherein such lands are situated, a·contest may be filed as hereinbefore provided, and such contest shall be upon the right of applicant to purchase, as provided in the foregoing sections of this act." Id., § 6801.

So far, the act seems to have reference only to the right of purchase secured to prior occupants and the procedure to be followed by them in perfecting such right. Anderson is not a prior occupant. He asserts that there are no prior occupants of the land in question, nor any one else having any interest therein other than the state, and claims the right to purchase it as the first applicant therefor under section 7 of the act, which reads:

"Any person desiring to purchase tide lands for the purposes of oyster planting may purchase tide lands of the third class not included in any natural oyster beds or any reserve pursuant to the provisions of this act, in subordination to any preemption right confirmed by said act of March 26, 1890. Nothing in this act shall be construed so as to

effect [affect] the preference rights of shore or upland
owners, or improvers, as conferred by the provisions of said
act or other provisions of law." Id., § 6803.

Section 8 restricts the right to purchase to citizens, and
§ 9 reads in part as follows:

"If said land be used by the purchasers or any successors
in interest of such purchaser in whole or in part for other
than the purposes specified in this act, then upon applica-
tion by any citizen to the state land commissioner such sale
may be canceled, and the said land shall revert to the state
and shall be subject to sale as herein provided, but not to
such defaulting purchaser or such defaulting successor in
interest." Id., § 6804.

This manifestly is the nature of the defeasance to be con-
tained in the deed referred to in the language of section 3,
above quoted.

The title of the act not only expresses its subject-matter,
to wit, "providing for the sale and purchase of tide lands
. . . for the purposes of oyster planting," which was as
far as was necessary to go in that respect, but the title
also informs us that the act is "to encourage and facilitate
said industry." Thus we have expressed in the title what
was manifestly a moving cause for the passage of the act.
This, we think, suggests at the outset that caution be ex-
ercised, to the end that there be not considered as belonging
to the board such far reaching discretionary powers as
might in their exercise defeat this declared purpose of the
act.

Counsel for the board, referring to applications to pur-
chase made by prior occupants of oyster tide land, concede
that:

"With respect to the acceptance of such applications the
board of state land commissioners have no discretion if the
provisions of the statute are complied with."

Counsel argue, however, that the disposition of such land
to other persons for purpose of oyster cultivation is a mat-

ter wholly within the discretion of the board; in other words, that if there be no prior occupant seeking to perfect his right to purchase, then the disposition of the land, under § 7 of the act, is a matter wholly within the discretion of the board. We cannot assent to this interpretation of the act. If there be no prior right to purchase resting upon occupancy, and no rights of upland owners in the way, as to any given tract of tide land of the class subject to sale for the purpose of oyster cultivation under § 7 of the act, we are of the opinion that any person having the citizenship qualifications prescribed by the act is as much entitled to purchase as any one whose rights rest upon prior occupancy. Section 7 plainly gives to all persons possessing the citizenship qualifications the right to purchase *"pursuant to the provisions of this act,"* in subordination to the rights of prior occupants and of upland owners. The words "pursuant to the provisions of this act" manifestly have reference to the procedure prescribed in the preceding sections of the act, which, read apart from § 7, might be construed as having reference only to the rights of the prior occupants; but manifestly § 7, giving the right to purchase to other persons, contemplates that they may perfect their right to purchase by the procedure prescribed for the perfection of the rights of prior occupants.

The legislature has, by this act, prescribed the conditions to be complied with on the part of a qualified applicant, and given him the right to acquire land of the class mentioned by complying with such prescribed conditions. We look in vain in the language of the act for discretionary power in the board to withhold this right from a qualified applicant, whether he be a prior occupant or not. If the board has such discretion, then it could defeat the declared purpose of the act, to wit, "to encourage and facilitate said industry," by concluding that "it is not to the best interests of the state to sell said tide lands for the purposes contemplated," using its own language in its order here in ques-

tion. What the best interests of the state are in that behalf was determined by the legislature in the passage of this act. We think there is no escape from the conclusion that all qualified persons complying with the legislative prescribed conditions are entitled to purchase lands of the class mentioned in the act for purposes of oyster cultivation, and that in this respect the board is without discretion to ignore such applications, and without discretion to withdraw such lands from such acquisition.

We do not mean to hold that the board has not some discretion in exercising its direction, oversight and approval of the survey and description of a particular tract of land to be acquired under the act, nor that it is not the duty of the board to decide questions of priority, questions of qualification of the applicant, as to whether or not the land in question is in fact of the class subject to sale under the act, and possibly some other incidental questions; but those questions are not here involved. It is in the refusal to consider these questions that the board committed error in this case.

Counsel for the board call our attention to the decision of this court in *Polson v. Callvert*, 38 Wash. 614, 80 Pac. 815. That case involved an attempted review in the courts of a decision of the board of state land commissioners refusing to offer for sale certain tide lands. A reading of the decision renders it apparent that it was not a case of the sale of oyster tide land under the act of 1895, but under a statute quoted in the decision which plainly rendered the matter discretionary with the board. We think this decision is not controlling here. Our attention is also called to the case of *State ex rel. Pelton v. Ross*, 39 Wash. 399, 81 Pac. 865, where it was sought to review in this court a decision of the commissioner of public lands refusing to lease certain school lands to an applicant. The statute referred to in that decision, which the applicant apparently relied upon in support of his claimed right to lease, could not possibly be construed as rendering it compulsory upon

the commissioner to lease the land to any one. Indeed, one section of the law relating to the lease of school land, being § 2156 of Bal. Code, now Rem. Code, § 6688, expressly provides that any and all bids may be rejected, and the earnest money paid by the applicant returned to him. This decision, we think, is of no controlling force here.

It is suggested by counsel for the board that we should be slow to reach this conclusion because, as they argue, it may result in allowing an applicant to purchase a long narrow strip such as might seriously impair the value of the state's tide lands, since, under the act, an applicant may purchase as much as one hundred acres of tide land for oyster cultivation. It seems to us this fear is without foundation, in view of the supervisory power of the board over the "survey and description" of any tract to be so purchased, as prescribed by § 2 of the act.

Some fear is also expressed by counsel for the board that to limit its discretionary powers as indicated by our views expressed in this opinion might result in purchasers under the act being able to hold the land by merely refraining from using it for other than oyster cultivation though not using it for that purpose, citing *State ex rel. Horan v. Savidge,* 79 Wash. 479, 140 Pac. 559, where we held that the land commissioner, under the defeasance provisions of § 9 of the act, is empowered to cancel the deed for the one cause only that the purchaser is using it "in whole or in part for purposes other than specified in this act." Our holding was there made in view of the fact that this is a limitation upon the power of the commissioner which we could not extend by construction. We apprehend, however, that if a purchaser of land for purposes of oyster cultivation should refrain from using it for that purpose and did not use it for any other purpose, and would thus work a fraud upon the state in view of the purposes for which the land was granted to him, it would not be at all difficult for the state to find a remedy on the equity side of its courts.

We are of the opinion that the judgment of the trial court reversing the order and decision of the board and remanding the matter to the board with directions to entertain Anderson's application and proceed in the manner provided by the act should be affirmed. It is so ordered.

ELLIS, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.